No. 3--10--0260

Filed December 7, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | |
|---|---|
| MARILEE CURTO, an Administrator ) | Appeal from the Circuit Court |
| of the Estate of Charles Curto, ) | of the 10th Judicial Circuit, |
| Deceased ) | Tazewell County, Illinois, |
|     Plaintiff-Appellee, ) | |
| ) | |
| v. ) | No. 09--L--116 |
| ) | |
| ILLINI MANORS, INC., an ) | |
| Illinois Corporation, and ) | |
| PEKIN MANORS, ) | Honorable |
| ) | Michael E. Brandt, |
|     Defendant-Appellant. ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices O'Brien and Wright concurred in the judgment and opinion.

OPINION

Plaintiff, Marilee Curto, filed a complaint against defendant, Illini Manors, Inc., and Pekin Manors (Pekin Manors),[1] under the Illinois Nursing Home Care Act (Nursing Home Care Act) (210 ILCS 45/1-101 et seq. (West 2008)) for personal injuries her husband suffered while a resident at Pekin Manors and his wrongful death. Defendant moved to dismiss the complaint and compel arbitration.

---

[1] The correct name of defendant is "UDI #10, LLC."

The trial court denied the motion, and we affirm.

On August 9, 2007, Marilee entered into a contract with Pekin Manors, a residential nursing home, to admit and care for her husband, Charles. The contract named Charles as the resident and Marilee as the "Guardian/Responsible Party." Marilee signed the form on the preprinted signature line which designated her as the "Legal Representative." Charles did not sign the contract.

The parties also entered into a separate arbitration agreement, which provided that "any and all disputes arising hereunder shall be submitted to binding arbitration and not to a court for determination." In the arbitration agreement, each party waived its right to a trial by jury. Marilee signed the arbitration agreement above the line that stated "Signature of Resident Representative." Charles did not sign the arbitration agreement.

On August 13, 2009, Marilee filed a complaint against Pekin Manors pursuant to the Nursing Home Care Act for personal injuries Charles sustained while he was a resident. The complaint also sought damages suffered by Charles' next of kin under the Wrongful Death Act (740 ILCS 180/1 et seq. (West 2008)). It further alleged that Charles suffered pain and anguish, which subjected defendant to liability under the Survival Act (755 ILCS 5/27-6 (West 2008)), and that his heirs incurred expenses, which they were entitled to recover under the Rights of Married Persons Act (Family Expense

2

Act) (750 ILCS 65/15 (West 2008)).

Pekin Manors filed a motion to dismiss and to compel arbitration, asserting that the estate was contractually bound by the arbitration agreement Marilee signed when Charles was admitted. After a thorough examination of authority supporting both positions, the trial judge denied the motion. The judge found that "the spouse is not an agent for the other spouse for purposes of an agreement to arbitrate." He concluded that the arbitration agreement was not valid and enforceable because there was no indication that Marilee had the authority to bind Charles to the mandatory arbitration terms of the contract.

STANDARD OF REVIEW

Initially, the parties dispute the standard of review. Generally, the issue we are asked to consider on an interlocutory appeal is whether there was a sufficient showing to sustain the order of the trial court granting or denying the relief sought. Onni v. Apartment Investment & Management Co., 344 Ill. App. 3d 1099 (2003). However, where the trial court does not make any factual findings, or the underlying facts are not in dispute and the court's decision is based on a purely legal analysis, we review the trial court's denial of a motion to stay the proceedings and compel arbitration de novo. La Hood v. Central Illinois Construction, Inc., 335 Ill. App. 3d 363 (2002). Here, the trial court based its decision on the undisputed facts in the record.

3

Thus, our review of the issue is <u>de novo</u>.  See <u>La Hood</u>, 335 Ill. App. 3d at 364.

ANALYSIS

Pekin Manors claims that Marilee was Charles' agent and thus the agreement to arbitration is enforceable against him.  It contends that the evidence permitted a finding of agency based on (1) actual authority and (2) apparent authority.

I.  Agency

Whether a nonsignatory party is bound to an arbitration agreement is dictated by the ordinary principles of contract and agency.  <u>Johnson v. Noble</u>, 240 Ill. App. 3d 731 (1992).  The spouse's signature on an arbitration agreement may bind a nursing home resident if the spouse has the authority to sign the document as the resident's agent.  The status of the parties as husband and wife, by itself, does not create an agency relationship.  <u>Capital Plumbing & Heating Supply Co. v. Snyder</u>, 2 Ill. App. 3d 660 (1971).  The agency of the spouse is a question of fact to be proved by direct or circumstantial evidence; there is no presumption that the wife has authority to act for the husband.  <u>Fettes, Love & Sieben, Inc. v. Simon</u>, 46 Ill. App. 2d 232 (1964).  The scope and extent of an agency relationship depend on the terms of the agreement between the principal and the agent and the intention of the parties.  <u>Brown v. Kerber Packing Co.</u>, 342 Ill. App. 474 (1951).  The party claiming an agency relationship must prove it by a preponderance of

4

the evidence.  Granite Properties Ltd. Partnership v. Granite Investment Co., 220 Ill. App. 3d 711 (1991).

## A.  Actual Authority

Pekin Manors first argues that Marilee had actual authority to bind Charles to the arbitration agreement because she signed the admission contract and the arbitration agreement as her husband's "representative."

In any agency relationship, the principal can be legally bound by action taken by the agent where the principal confers actual authority on the agent.  Granite Properties, 220 Ill. App. 3d at 714.  Actual authority may be express or implied.  Buckholtz v. MacNeal Hospital, 337 Ill. App. 3d 163 (2003).  Express authority is directly granted to the agent in express terms by the principal and extends only to the powers the principal confers upon the agent.  United States v. Schaltenbrand, 930 F.2d 1554 (11th Cir. 1991).  Such authority may be granted through a written contract, a power of attorney or a court-ordered guardianship. Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc., 326 Ill. App. 3d 126 (2001) (power of attorney explicitly listed powers given to the attorney-in-fact); 755 ILCS 5/11a-17(a) (West 2006) (guardian has authority as provided in court order under provisions of Probate Act).  Implied authority, on the other hand, is actual authority circumstantially proved.  Buckholtz, 337 Ill. App. 3d at 172.  It arises when the conduct of the principal, reasonably interpreted, causes the agent

5

to believe that the principal desires him to act on the principal's behalf. See Restatement (Second) of Agency §26 (1958). For example, implied authority may be established from the circumstances of a case based on prior course of dealing of a similar nature between the alleged agent and principal or from a previous agency relationship. Hartshorn v. State Farm Insurance Co., 361 Ill. App. 3d 731 (2005); Linowiecki v. Wisniewski, 249 Ill. App. 474 (1928).

In this case, Marilee's signature on the nursing home documents did not confer express or implied authority on her. First, nothing in the record suggests that Charles gave Marilee express authority to make legal decisions on his behalf. The terms of the admission contract and the arbitration agreement did not give Marilee authority to act as Charles' agent, nor did Charles execute a power of attorney appointing Marilee as his agent for that purpose. Second, Pekin Manors failed to demonstrate any implied authority. No evidence indicates that Charles was present and directed Marilee to sign the arbitration agreement as his representative, nor is there any indication in the record that Charles knew Marilee signed the agreement and agreed to or adopted her signature as his own. Thus, Marilee's signature as a representative does not establish that she had actual authority to sign the arbitration agreement on Charles' behalf.

We recognize that this issue is one of first impression in

6

Illinois. However, several other jurisdictions have addressed the authority of a spouse to bind a nursing home resident to an arbitration agreement and have reached similar dispositions. In Dickerson v. Longoria, 995 A.2d 721 (Md. 2010), a personal representative signed an arbitration agreement on the resident's behalf when he was admitted to the nursing home. The Maryland Court of Appeals held that the representative, Dickerson, did not have actual authority to sign the arbitration agreement. The court concluded that Dickerson's reference to herself as the resident's "legal power of attorney" did not expand her authority absent some evidence that the resident, Bradley, authorized, adopted or acquiesced to the statement. The court specifically noted: "The fact that Dickerson signed the arbitration agreement at issue in this case certainly does not alter Dickerson's authority, as there is no evidence suggesting that Bradley authorized Dickerson to make this type of decision on his behalf." Dickerson, 995 A.2d at 740.

The majority of jurisdictions have followed Dickerson's reasoning and have concluded that a spouse or other family member did not have actual authority to sign an arbitration agreement on the resident's behalf. Koricic v. Beverly Enterprises-Nebraska, Inc., 773 N.W.2d 145 (Neb. 2009) (decedent's son did not possess authority necessary to sign arbitration agreement); Mississippi Care Center of Greenville, LLC v. Hinyub, 975 So. 2d 211 (Miss. 2008) (daughter did not have authority to enter arbitration

7

agreement where there was no declaration of resident's inability to manage his affairs and no power of attorney in the record); <u>Mt. Holly Nursing Center v. Crowdus</u>, 281 S.W.3d 809 (Ky. Ct. App. 2008) (spouse lacked authority to bind resident to arbitration agreement); <u>Goliger v. AMS Properties, Inc.</u>, 19 Cal. Rptr. 3d 819 (Cal. Ct. App. 2004) (daughter was not acting as mother's agent when she signed arbitration agreement without some evidence of authority beyond merely signing admission contracts). See also <u>Compere's Nursing Home, Inc. v. Estate of Farish</u>, 982 So. 2d 382 (Miss. 2008); <u>Sennett v. National Healthcare Corp.</u>, 272 S.W.3d 237 (Mo. Ct. App. 2008); <u>Ashburn Health Care Center, Inc. v. Poole</u>, 648 S.E.2d 430 (Ga. Ct. App. 2007); <u>Flores v. Evergreen at San Diego, LLC</u>, 55 Cal. Rptr. 3d 823 (Cal. Ct. App. 2007); <u>Landers v. Integrated Health Services of Shreveport</u>, 39,739-CA (La. App. 2 Cir. 5/11/05) 903 So. 2d 609; <u>Pagarigan v. Libby Care Center, Inc.</u>, 120 Cal. Rptr. 2d 892 (Cal. Ct. App. 2002).

Even where a health care power of attorney was present, courts have concluded that the spouse lacked authority to sign the arbitration agreement. Those cases have held that a health care power of attorney granted for medical decisions does not confer authority to sign an arbitration agreement waiving legal rights. See <u>Life Care Centers of America v. Smith</u>, 681 S.E.2d 182 (Ga. App. 2009) (power of attorney granted to daughter for medical decisions did not grant authority to waive legal rights under arbitration

8

agreement); <u>Lujan v. Life Care Centers of America</u>, 222 P.3d 970 (Colo. Ct. App. 2009) (health care proxy's decision to agree to arbitrate was unauthorized); <u>Texas Cityview Care Center, L.P. v. Fryer</u>, 227 S.W.3d 345 (Tex. Ct. App. 2007) (medical power of attorney did not indicate that it was intended to confer authority to sign arbitration agreement). See also <u>Monticello Community Care Center, LLC v. Estate of Martin</u>, 17 So. 3d 172 (Miss. Ct. App. 2009); <u>Moffett v. Life Care Centers of America</u>, 187 P.3d 1140 (Colo. App. 2008); <u>Blankfield v. Richmond Health Care, Inc.</u>, 902 So. 2d 296 (Fla. Dist. Ct. App. 2005). But see <u>Owens v. National Health Corp.</u>, 263 S.W.3d 876 (Tenn. 2007) (attorney-in-fact authorized to enter into arbitration agreement as part of contract admitting nursing home resident).

As the trial court said in denying the motion to compel arbitration: "[T]he agreement to submit to binding arbitration is <u>ultra</u> <u>vires</u> of a power of attorney for health care and the duty/power to provide for the nursing home spouse's medical needs."

These cases support our conclusion that a spouse's signature on an arbitration agreement as the resident's representative does not demonstrate actual authority to bind a nursing home resident to the agreement. An actual agency relationship is controlled by the express authorization of the principal or implied conduct of the principal and agent. The principal's conduct is crucial to establish actual authority. Such authority is not dictated by an

independent act or signature of the agent. Thus, absent some evidence that the resident gave the agent spouse authority to sign the agreement to arbitrate on his behalf, the resident is not bound by its terms. By our decision today, we join the majority of states reviewing this issue.

Nevertheless, Pekin Manors urges us to consider the decisions of a minority of courts that have enforced nursing home arbitration agreements signed by a family member. Those cases follow the reasoning of Sovereign Healthcare of Tampa, LLC v. Estate of Huerta, 14 So. 3d 1033 (Fla. Dist. Ct. App. 2009). In Sovereign Healthcare, the Florida appellate court held that a daughter-in-law had the authority to sign a contract for admission on the resident's behalf, including the arbitration agreement, in reliance on a durable power of attorney. The durable power of attorney in that case included a catch-all provision giving the attorney-in-fact the authority "to sign any and all releases or consent required." Sovereign Healthcare, 14 So. 3d at 1035; see also Triad Health Management of Georgia, III, LLC v. Johnson, 298 S.E.2d 785 (Ga. 2009) (signature of patient's son on arbitration agreement was enforceable where son had general power of attorney executed by father); Five Points Heath Care, Ltd v. Mallory, 998 So. 2d 1180 (Fla. Dist. Ct. App. 2008) (daughter had durable power of attorney to prosecute, defend and settle all actions or other legal proceedings and to "do anything" regarding resident's estate).

10

These cases, however, are distinguishable. In each case, there is at least some evidence of actual authority granting general powers of attorney to the spouse or family representative. Here, Pekin Manors has produced neither a general or property power of attorney, nor an order of guardianship authorizing Marilee to administer her husband's legal affairs. Thus, Marilee lacked actual authority to sign the arbitration agreement on Charles' behalf.

## B. Apparent Authority

Pekin Manors also claims that the arbitration agreement is valid because Marilee acted as her husband's apparent agent at the time of his nursing home admission. Pekin Manors argues that since Marilee made a health care decision for her husband to be placed in the nursing home and Charles remained in the nursing home, Charles consented to Marilee's authority to sign the arbitration agreement.

In the absence of actual authority, a principal can be bound by the acts of a purported agent when that person has apparent authority to act on behalf of the principal. Amcore Bank, 326 Ill. App. 3d at 137. Apparent authority arises when a principal creates a reasonable impression to a third party that the agent has the authority to perform a given act. Crawford Savings & Loan Ass'n v. Dvorak, 40 Ill. App. 3d 288 (1976). To prove apparent authority, the proponent must show that (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority, (2)

11

based on the actions of the principal and agent, the third party reasonably concluded that the agent had authority to act on the principal behalf, and (3) the third party justifiably relied on the agent's apparent authority to his detriment. Career Concepts, Inc. v. Synergy, Inc., 372 Ill. App. 3d 395, 404 (2007) (company's sales manager had apparent authority to sign contract with employee-placement agency where company authorized manager to enter other contracts and interview potential employees). In establishing apparent authority, it is critical to find some words or conduct by the principal that could reasonably indicate consent. Emmenegger Construction Co. v. King, 103 Ill. App. 3d 423 (1982). An agent's authority may be presumed by the principal's silence if the principal knowingly allows another to act for him as his agent. Elmore v. Blume, 31 Ill. App. 3d 643, 647 (1975).

The record before us demonstrates that Charles never acted or conducted himself in a way that would indicate to Pekin Manors that Marilee was his apparent agent for purposes of the arbitration agreement. There is no evidence showing that Charles was present when Marilee signed the agreement or that Charles understood Marilee was signing an agreement waiving his legal rights. The record contains no words or conduct by Charles that would reasonably indicate consent. Thus, Pekin Manor failed to establish that Marilee had apparent authority to sign the arbitration agreement on her husband's behalf. As a result, Marilee cannot be

12

required to arbitrate Charles' claims against the nursing home.

Pekin Manors attempts to analogize this case to <u>Strino v. Premier Healthcare Associates, P.C.</u>, 365 Ill. App. 3d 895 (2006). In that case, parents of a newborn filed a medical negligence case against the obstetrician that delivered the baby Cesarian section. The jury found the mother was contributorily negligent due to the father's decision to decline the use of forceps for a vaginal delivery. On appeal, the parents claimed that the agency instruction was error. The reviewing court disagreed, finding an agency relationship based on the father's blatant refusal to allow the doctor to use forceps, the mother's presence in the operating room and her silence when the doctor requested her permission to use forceps. <u>Strino</u>, 365 Ill. App. 3d at 902.

The facts in this case are dissimilar. The record does not indicate that Charles was present when Marilee signed the contracts on his behalf. And neither party suggests that the nursing home staff asked Charles to agree to the terms of the arbitration agreement. Without some evidence of an agency relationship, he cannot be bound by the arbitration agreement.

## II. Marilee's Personal Claims

In the alternative, Pekin Manors argues that Marilee is obligated to arbitrate her personal claims for wrongful death and medical expenses because she had the authority to bind herself to the agreement. We disagree.

13

Marilee signed the arbitration agreement as "Resident Representative." Marilee did not sign the agreement in her individual capacity. She signed the agreement as a representative of the beneficiary, Charles. Thus, Marilee's signature carries no legally binding weight regarding the arbitration of her personal claims against the nursing home under the Wrongful Death Act or the Family Expense Act. See Ward v. National Healthcare Corp., 275 S.W.3d 236 (Mo. 2009) (arbitration clause signed by daughter did not preclude daughter's personal wrongful death claim); Goliger, 19 Cal. Rptr. 3d at 821.

CONCLUSION

Because Marilee lacked authority to enter into the arbitration agreement on behalf of Charles, the arbitration agreement is invalid. Therefore, Marilee is not required to arbitrate her claims against Pekin Manors. In light of our holding on the issue of agency, it is unnecessary for this court to address the remaining issues raised on appeal.

The judgment of the circuit court of Tazewell County denying the motion to dismiss and compel arbitration is affirmed. The cause is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed and remanded.

14