2023 IL App (1st) 220391

FIRST DISTRICT,
FIRST DIVISION
June 5, 2023

No. 1-22-0391

CHERYL PARKER, as Independent Administrator
of the Estate of Mae Jefferson, Deceased,

          Plaintiff-Appellant,

v.

SYMPHONY OF EVANSTON HEALTHCARE,
LLC, an Illinois Limited Liability Corporation, d/b/a
Symphony of Evanston, and MAESTRO
CONSULTING SERVICES, LLC, an Illinois
Limited Liability Corporation,

          Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeal from the
Circuit Court of
Cook County, Illinois.

No. 2021 L 1995

Honorable
John H. Ehrlich,
Judge Presiding

JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Presiding Justice Lavin and Justice Pucinski concurred in the judgment and opinion.
Justice Pucinski also specially concurred, with opinion.

**OPINION**

¶ 1   Plaintiff Cheryl Parker, as the independent administrator of the estate of Mae Jefferson,

filed an action against defendants Symphony of Evanston Healthcare, LLC (Symphony), and

Maestro Consulting Services, LLC (Maestro) (collectively, defendants), alleging violations of

the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2020)) and common-law

negligence pursuant to the Survival Act (755 ILCS 5/27-6 (West 2020)) and Wrongful Death Act

(740 ILCS 180/1 *et seq.* (West 2020)).

¶ 2   Symphony moved to dismiss and compel arbitration of the Survival Act claims, arguing

that Mae's daughter, Kathy Jefferson (Kathy), signed a binding arbitration agreement as Mae's

agent pursuant to a health care power of attorney. The trial court granted the motion, dismissed and compelled arbitration of the survival claims, and stayed the wrongful death claims.

¶ 3    Plaintiff filed an interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). See *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001) (circuit court's order compelling arbitration is injunctive in nature and is subject to interlocutory appeal under Rule 307(a)(1)). On appeal, plaintiff argues that Kathy lacked authority to bind Mae to the arbitration agreement and that the agreement is procedurally and substantively unconscionable. For the following reasons, we reverse and remand for further proceedings.

¶ 4                              BACKGROUND

¶ 5    On May 20, 2005, Mae executed an Illinois statutory short form power of attorney for health care (755 ILCS 45/4-10(b) (West 2004)) designating Kathy as her agent. As Mae's "attorney-in-fact," Kathy was authorized "to make any and all decisions for [her] concerning [her] personal care, medical treatment, hospitalization and health care and to require, withhold or withdraw any type of medical treatment or procedure, even though [her] death may ensue."

¶ 6    On September 17, 2017, Mae was admitted as a resident of Symphony, a long-term care facility. On October 16, 2017, Kathy executed a 13-page "Contract Between Resident and Symphony of Evanston" (admission agreement) on behalf of Mae, detailing the rights and obligations of each party during Mae's residency. Kathy signed a separately paginated "Health Care Arbitration Agreement" on the same date. Section G of the admission agreement provides that "[t]he Resident and Facility have entered into a separate Health Care Arbitration Agreement in connection with this Contract and expressly affirm and state that said Health Care Arbitration Agreement be incorporated into this document as though stated and contained herein."

¶ 7    The arbitration agreement defines the parties as "Resident" or "Resident's Authorized Representative" and "facility" as "the particular facility where the Resident resides, its parents, affiliates, and subsidiary companies, [and] owners ***." The first "Recital" of the arbitration agreement states, "This health care arbitration agreement is not a condition to the rendering of health care services by any party."

¶ 8    The arbitration agreement provides:

"In the event of any claim arising out of (1) any dispute between you and us, (2) any dispute relating to services rendered for any condition, (3) injuries alleged to have been received by patient, (3) death of patient due to health care provider negligence or other wrongful act, but not including intentional torts, (4) services rendered for any condition and arising out of the diagnosis, treatment or care of the patient, and (5) collection proceedings in excess of $50,000.00, the claim will be submitted to binding arbitration pursuant to the provisions of this health care arbitration agreement."

Arbitration is also mandated for the above claims brought pursuant to the Illinois Survival Act. The agreement does not apply to collection proceedings under $50,000, involuntary discharge proceedings, probate estate claims, petitions for guardianship, and health care liens.

¶ 9    Section three, "Expenses of Arbitration," provides that "[i]n consideration for the execution of this agreement Facility agrees to pay up to $5,000.00 of Resident's arbitration costs, attorney's fees and out-of-pocket expenses" and that "Resident further waives any and all right to the collection of Statutory Attorney's fees, included but not limited to those provided for in the Illinois Nursing Home Care Act." "All remaining costs and expenses of the Arbitrators' will be apportioned equally among all parties," and "[a]ll remaining costs and fees associated with prosecuting and defending said claim shall be borne by each party."

¶ 10          An "AGREEMENT TO ARBITRATE HEALTH CARE NEGLIGENCE CLAIMS NOTICE TO PATIENT" immediately precedes the signature block. In all-capital letters, residents are advised that they cannot be required to sign the arbitration agreement to receive treatment, that their right to a trial by judge or jury will be barred as to any dispute relating to injuries that may result from negligence during their treatment or care, and that any claims that may arise out of their health care will be submitted to a panel of arbitrators rather than a court.

¶ 11          On February 22, 2021, plaintiff filed a complaint against defendants, alleging violations of the Nursing Home Care Act against Symphony (count I) and common-law negligence against both defendants pursuant to the Survival Act (counts II and IV) and the Wrongful Death Act (counts III and V). Plaintiff also alleged that Maestro "owned, operated, and/or managed" Symphony and "exercised significant control over *** the day-to-day operations."

¶ 12          Plaintiff asserted that Mae was "high risk for the development and deterioration of pressure sores"; that Symphony failed to provide appropriate care "to prevent the development and deterioration" of this condition; and that Maestro negligently failed "to provide appropriate care and supervision to prevent pressure sores from developing, worsening, and becoming infected." As a result, Mae experienced "deterioration of her physical, mental, and psychosocial condition" and "unnecessary pain and suffering," which "caused or contributed to" her death in January 2020.

¶ 13          On June 17, 2021, Symphony moved to dismiss and compel arbitration of plaintiff's survival claims pursuant to section 2-619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2020)) and to stay plaintiff's wrongful death claims pending arbitration.[1]

---

[1]While the trial court's order states that "defendants" moved to dismiss and compel arbitration, only Symphony filed the motion to dismiss and compel arbitration.

Symphony alleged that Kathy had executed an arbitration agreement as the "agent for Mae \*\*\* under a healthcare power of attorney" and "clearly and unambiguously agreed to submit any and all disputes and claims for personal injuries" arising from Mae's residency at Symphony to binding arbitration.

¶ 14   In response to the motion, relying on *Fiala v. Bickford Senior Living Group, LLC*, 2015 IL App (2d) 141160, plaintiff asserted that, "where an arbitration provision is optional or not necessary to gain admission to a long-term care facility, a person acting as the power of attorney for healthcare for a patient cannot bind the patient to that agreement."[2] In other words, Kathy lacked authority to bind Mae to arbitration because arbitration was optional and not a condition to admission. Plaintiff further alleged that the arbitration agreement was procedurally unconscionable because Kathy "did not have equal bargaining power," was not "properly informed about the contents of the documents she was signing," and had " 'no hand in its drafting' " and because the agreement's "key terms were hidden in 'a maze of fine print.' " Plaintiff also alleged that the arbitration agreement was substantively unconscionable because it required residents to waive statutory attorney fees under the Nursing Home Care Act and that Maestro was not a party to the arbitration agreement.

¶ 15   In support of her response, plaintiff attached the deposition of Leslie Riccardino, who signed the admission and arbitration agreements as Symphony's representative. Riccardino testified that she has been Symphony's business office manager since April 2015. She was present when Kathy signed the agreements, but Mae was not. Since Mae was "nonverbal" and was on the "memory support floor," Riccardino was concerned that Mae "wouldn't be able to

---

[2]The parties conducted limited discovery relating to Symphony's motion.

understand the contract." She "always reach[es] out to families" of residents admitted to memory support to have them sign the agreements.

¶ 16        Riccardino explained that the agreements are "presented at the same time" but that the arbitration agreement is "always presented last." She "review[s] each portion with residents" when she presents the agreements. With respect to the arbitration agreement, Riccardino informs residents and family members that "if they had a dispute with the facility or the facility had a dispute with them that they would agree to handle it through the process of arbitration as opposed to going through court." She "always give[s] the representative or the resident the option to refuse the arbitration agreement," and about 85% refuse to sign.

¶ 17        Plaintiff also attached the affidavit of Kathy, attesting that she "never held a Power of Attorney for Property for Mae." Mae "did not direct [her] to sign the Arbitration Agreement as her representative," and Kathy "was not aware that [she was] waiving" Mae's right to a trial by jury and attorney fees by signing. If anyone had explained the arbitration agreement to her, she "would not [have] agreed to sign away such rights."

¶ 18        In reply, Symphony claimed that Kathy had express authority to bind Mae because "[t]he agreement to arbitrate is part of the admission contract, included at the end of the contract and presented for review and signature at the same time along with the rest of the contract." Kathy also had implied authority because she "held herself out several times as her mother's authorized representative." Symphony asserted that it "cannot make an agreement to arbitration a mandatory part of its admission process" pursuant to a rule promulgated by the Centers for Medicare and Medicaid Services (CMS) in 2019 and that "[t]his change in the regulations must be taken into account when relying upon the holding in *Fiala*." Finally, Symphony denied that the arbitration

agreement was procedurally or substantively unconscionable and asserted that Maestro was a party to the agreement as an "affiliate" of Symphony.

¶ 19    On February 22, 2022, the trial court granted the motion to dismiss and compel arbitration. The court found that the arbitration agreement is not procedurally unconscionable because the "two paragraphs above the signature block make plain, in large-font, all-capital letters that Kathy was on notice" that the agreement mandated arbitration. Nor is it substantively unconscionable because, contrary to Kathy's assertion in her affidavit that she "was unaware of the arbitration agreement's contents," as a signatory to the agreement, Kathy is " 'charged with knowledge of and assent to the agreement signed.' "

¶ 20    In finding that the arbitration and admission agreements "fully comport with *Fiala*'s holding," the court explained, as follows: the arbitration agreement makes "plain that treatment is not contingent on signing" it and, because section G of the admission agreement incorporates the arbitration agreement by reference, "the arbitration agreement is part of the admission agreement"; and the agreements "comport with [a] federal rule" issued by the CMS in 2019, which prohibits nursing homes from requiring residents or their representatives from signing binding arbitration agreements "as a condition of admission to, or a requirement to continue to receive care at," the facility. 42 C.F.R. § 483.70(n)(1) (2019). The court also held that Maestro was a party to the arbitration agreement because the agreement defines "facility" to include its "parents, affiliates, and subsidiary companies" and that plaintiff was bound by her complaint allegation that Maestro "owned, operated, and/or managed" Symphony.

¶ 21    The trial court granted the motion to dismiss and compel arbitration of the survival claims (counts I, II, and IV) and stayed the wrongful death claims (counts III and V) pending resolution of arbitration.

¶ 22                                                    ANALYSIS

¶ 23          Section 2-619(a)(1) provides for the involuntary dismissal of an action based on the

court's lack of jurisdiction over the subject matter of the action. 735 ILCS 5/2-619(a)(1) (West

2020). Section 2-619(a)(1) is "an appropriate provision by which a defendant may compel

compliance with a binding arbitration provision." *Abrogast v. Chicago Cubs Baseball Club,*

*LLC*, 2021 IL App (1st) 210526, ¶ 16 (citing *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376,

383 (2004)). A court ruling on a section 2-619(a)(1) motion to dismiss interprets all pleadings

and supporting documents in the light most favorable to the nonmoving party. *Id*.

¶ 24          Defendants argue that this court should review the trial court's order for an abuse of

discretion because "the nature of the issue on appeal pertains to factual findings requiring

deference." We disagree. Where, as here, the trial court grants a motion to compel arbitration

without an evidentiary hearing and "base[s] its decision on a purely legal analysis," the

applicable standard of review is *de novo*. *QuickClick Loans, LLC v. Russell*, 407 Ill. App. 3d 46,

52 (2011); see *Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 11 (appropriate

standard of review was *de novo* where the trial court denied motion to compel arbitration

"without conducting an evidentiary hearing, the underlying facts were not in dispute, and the trial

court's order involved applying the law to undisputed facts"); *Hollingshead v. A.G. Edwards &*

*Sons, Inc.*, 396 Ill. App. 3d 1095, 1099 (2009) (denial of motion to compel arbitration without an

evidentiary hearing is reviewed *de novo*). Moreover, we review a section 2-619 motion to

dismiss *de novo*. *Borowiec*, 209 Ill. 2d at 383.

¶ 25          Arbitration agreements are on "equal footing with other contractual promises." *Bain v.*

*Airoom, LLC*, 2022 IL App (1st) 211001, ¶ 20. "Where there is a valid arbitration agreement and

the parties' dispute falls within the scope of that agreement, arbitration is mandatory and the trial

court must compel it." *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1175 (2002). "Like other contracts, however, an arbitration agreement 'may be invalidated by a state law contract defense of general applicability, such as fraud, duress, or unconscionability.' " *Bain*, 2022 IL App (1st) 211001, ¶ 21 (quoting *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 18).

¶ 26    Plaintiff argues that the arbitration agreement is unenforceable because Kathy lacked authority to bind Mae to the agreement. "Whether a nonsignatory party is bound to an arbitration agreement is dictated by the ordinary principles of contract and agency." *Curto v. Illini Manors, Inc.*, 405 Ill. App. 3d 888, 891 (2010). In an agency relationship, "the principal can be legally bound by action taken by the agent where the principal confers actual authority on the agent." *Id.* at 892. Actual authority can be express or implied. *Id.* Express authority may be granted through a power of attorney, whereas implied authority "arises when the conduct of the principal, reasonably interpreted, causes the agent to believe that the principal desires him to act on the principal's behalf." *Id.*

¶ 27    A statutory short form power of attorney for health care "authorizes the agent to make any and all health care decisions on behalf of the principal which the principal could make if present and under no disability, subject to any limitations on the granted powers that appear on the face of the form." 755 ILCS 45/4-10(c) (West 2020). An agent may "sign and deliver all instruments, negotiate and enter into all agreements and do all other acts reasonably necessary to implement the exercise of the powers granted to the agent." *Id.* The agent "is authorized to admit the principal to *** all types of hospitals, institutions, homes, residential or nursing facilities *** providing personal care or treatment for any tyle of physical or mental condition." *Id*. § 4-10(c)(2). "[T]he general rule limits the scope of the health-care power of attorney to matters

involving the principal's health care and that the agent is given no authority over the principal's property or financial matters." *Fiala*, 2015 IL App (2d) 141160, ¶ 40.

¶ 28    The parties do not dispute that Kathy was authorized to admit Mae to Symphony pursuant to the health care power of attorney. See *id.* ¶ 31 ("the unambiguous language of the Power of Attorney Law encompasses a decision to admit the principal to an assisted-living facility such as defendant's"). Regardless, plaintiff argues that, because "agreeing to arbitration was not a condition precedent to Mae's admission" to Symphony, Kathy lacked the authority to sign the arbitration agreement based on the health care power of attorney. Defendants disagree, on grounds that the arbitration agreement was "integral to and part and parcel of the residency contract."

¶ 29    In *Fiala*, 2015 IL App (2d) 141160, ¶ 1, upon which both sides rely, the plaintiff's daughter, acting pursuant to a health care power of attorney, signed an "establishment contract" to admit the plaintiff to the defendant's assisted living facility. The establishment contract included a "Binding Arbitration Provision" that was an "integral part of the establishment contract" because "a prospective resident's agreement to the arbitration provision (and the other provisions of the establishment contract) was required in order to secure admission into defendant's facility." *Id.* ¶ 8. When the plaintiff sued the defendant, the defendant moved to dismiss and compel arbitration pursuant to the binding arbitration provision in the establishment contract. *Id.* ¶ 6. The trial court denied the motion. *Id.* ¶¶ 12-13.

¶ 30    The Second District reversed on appeal, finding that the plaintiff's daughter was authorized to sign the arbitration agreement under the health care power of attorney. *Id.* ¶ 38. While recognizing that a health care power of attorney does not ordinarily grant the agent authority over the principal's property or financial matters, the court explained that "health-care

decisions, such as placement in an assisted-living facility, are not so cut and dried." *Id.* ¶ 40. After examining multiple cases from other jurisdictions, the Second District held that "if an arbitration provision is *required for admission* to a care facility then it becomes part and parcel of the health-care decision to admit the patient to defendant's facility." (Emphasis added.) *Id.* ¶ 45. The court held that the plaintiff's daughter had actual authority to bind her father to the arbitration provision because "[a]cceptance of the arbitration provision, an integral part of the establishment contract, was a prerequisite to admission into defendant's facility." *Id.* ¶ 39.

¶ 31    Significantly, the *Fiala* court clarified that, "where the arbitration provision is *optional or otherwise not necessary to gain admission* to a long-term-care facility, the agent acting pursuant to a health-care power of attorney is not authorized to sign the arbitration provision and the patient cannot be bound by the agent's action." (Emphasis added.) *Id.* ¶ 44 (citing *Life Care Centers of America v. Smith*, 681 S.E.2d 182, 185-86 (Ga. Ct. App. 2010), and *Koricic v. Beverly Enterprises-Nebraska, Inc.*, 773 N.W.2d 145, 151 (Neb. 2009)). Because the arbitration provision in *Fiala* was a provision within the establishment contract, assent to which was required for admittance to the facility, it was an "integral part of plaintiff's admission" to the facility. *Id.* ¶ 45. Under these circumstances, the court found the arbitration provision was "neither optional nor freestanding." *Id.*

¶ 32    In contrast, the arbitration agreement in this case is both optional and freestanding. Section G of the admission agreement states that "Resident and Facility have entered into a *separate* Health Care arbitration agreement." (Emphasis added.) While the agreements were presented at the same time, they were separately paginated and separately signed. Most significantly, the arbitration agreement states that signing the agreement is not required to receive treatment. As Riccardino testified, the arbitration agreement is optional, and about 85%

of residents refuse to sign it. Therefore, signing the arbitration agreement was not an act "reasonably necessary to implement the exercise of" Kathy's health care power of attorney. See 755 ILCS 45/4-10(c) (West 2020); see also *Mason v. St. Vincent's Home, Inc.*, 2022 IL App (4th) 210458, ¶ 37 ("a principal will not be bound by an arbitration agreement signed by an agent under a health care power of attorney if the arbitration agreement is separate from the contract for services or not required for admission").

¶ 33    Defendants also argue that the arbitration agreement is "part of" the admission contract because section G of the admission agreement incorporates the arbitration agreement by reference. On the contrary, section G explicitly states that the arbitration agreement is a *separate* agreement. The *Fiala* court focused on whether the arbitration agreement was "*required for admission*" and therefore "part and parcel of the health-care decision to admit the patient to the facility." (Emphasis added.) *Fiala*, 2015 IL App (2d) 141160, ¶ 45. Since Kathy was not required to sign the arbitration agreement for Mae to be admitted to Symphony or to continue receiving care, it was not "reasonably necessary" for Kathy to sign the arbitration agreement to make a health care decision on behalf of Mae. See 755 ILCS 45/4-10(c) (West 2020).

¶ 34    Similarly, in *Testa v. Emeritus Corp.*, 168 F. Supp. 3d 1103, 1110 (N.D. Ill. 2016), the court found that a son lacked authority to bind his father to an arbitration agreement pursuant to a health care power of attorney. As in this case, "[the father's] admission into Emeritus was *not contingent* upon signing the Arbitration Agreement." (Emphasis in original.) *Id.* The court held that the agreements were "independent, and the separate promise to arbitrate was not a necessary condition to [the father's] admission to the facility or receipt of services or benefits." *Id.*

¶ 35    Defendants rely extensively on *Owens v. National Health Corp.*, 263 S.W.3d 876, 884 (Tenn. 2007), to argue that Kathy had authority to sign the arbitration agreement. Construing

Tennessee's power of attorney statute, *Owens* held that "an attorney-in-fact acting pursuant to a durable power of attorney for health care may sign a nursing-home contract that contains an arbitration provision because that action is necessary to 'consent *** to health care.' " *Id.* (quoting Tenn. Code Ann. § 34-6-201 (West 2006)). Unlike the instant case, the arbitration provision considered in *Owens* was not optional. *Id.* at 880-81.

¶ 36    Because we find that the arbitration agreement in this case is unenforceable, it is not necessary to address plaintiff's remaining claims that the arbitration agreement was unconscionable and that Maestro was not a party to the agreement.

¶ 37                                    CONCLUSION

¶ 38    For the foregoing reasons, we reverse the trial court's order dismissing and compelling arbitration of plaintiff's Survival Act claims and staying plaintiff's Wrongful Death Act claims pending resolution of arbitration and remand to the circuit court for further proceedings consistent with this order.

¶ 39    Reversed and remanded.

¶ 40    JUSTICE PUCINSKI, specially concurring:

¶ 41    Arbitration does not do anything associated with health care. It does not check the patient's vital signs, monitor heart rate, prevent or treat pressure sores, draw blood, set or maintain an IV, diagnose illness, or prescribe or dispense medication. Arbitration is not health care. It is about money. Arbitration is just simply not included in the agency given in a health care power of attorney (HCPOA). The patient could, of course, add it to the HCPOA, but absent that addition, it is just the worst kind of illusion for the providers to try to jam the authority to agree to arbitration into a HCPOA.

*Parker v. Symphony of Evanston Healthcare, LLC*, 2023 IL App (1st) 220391

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-L-1995; the Hon. John H. Ehrlich, Judge, presiding. |
| **Attorneys for Appellant:** | Michael W. Rathsack, of Park Ridge, and Steven M. Levin and Paul J. Connery, of Levin & Perconti LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Gregory E. Schiller, Lynn M. Reid, and David M. Macksey, of Johnson & Bell, Ltd., of Chicago, for appellees. |