NOTICE

Decision filed 07/08/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240645

NO. 5-24-0645

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF GRACE M. DUKES, Deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (Debra Small, Administrator of the Estate of Grace M. Dukes, Deceased, | ) | Vermilion County. |
| | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22-PR-157 |
| | ) | |
| Wells Fargo Clearing Services, LLC, | ) | |
| d/b/a Wells Fargo Advisors, and Brian Cain, | ) | |
| | ) | Honorable |
| Respondents-Appellants). | ) | Charles C. Hall, |
| | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Moore and Sholar concurred in the judgment and opinion.

**OPINION**

¶ 1    The petitioner, Debra Small, Administrator of the Estate of Grace M. Dukes, Deceased (Estate), filed a petition for citation to recover property and discover information against Kent Dukes; Robin Dukes; Wells Fargo Clearing Services, LLC, doing business as Wells Fargo Advisors (Wells Fargo Advisors); and Brian Cain. Wells Fargo Advisors and Cain (collectively, Wells Fargo) filed a motion to compel arbitration and claimed that the Estate was required to arbitrate its claims against them based upon the theory of direct benefits estoppel. The circuit court found that direct benefits estoppel did not apply under the facts of the case and denied the motion to compel arbitration. Wells Fargo appealed. For the following reasons, we affirm.

1

¶ 2                                    I. BACKGROUND

¶ 3      The following facts are taken from the parties' pleadings and exhibits. The decedent, Grace Dukes, passed away on July 4, 2021. She was preceded in death by her husband, Charles W. Dukes. During their marriage, Grace and Charles had two daughters, Debra Small and Laurie Holman, and two sons, Robin Dukes and Kent Dukes. Although Robin Dukes and Kent Dukes were named co-executors in the Last Will and Testament of Grace M. Dukes, Debra Small was appointed as the administrator of the estate with will annexed[1] to pursue the current action. Wells Fargo Advisors is a financial services firm based in St. Louis, Missouri. It offers financial services and investment advice to its clients. Brian Cain was employed by Wells Fargo Advisors as a financial and investment advisor, working at its branch office in Terre Haute, Indiana.

¶ 4      In 1990, Grace and Charles opened a joint account with a portfolio of assets (joint account) at A.G. Edwards. This account was held in joint tenancy with a right of survivorship. Subsequently, Wells Fargo Advisors acquired A.G. Edwards and began to provide investment advice and financial services to former clients of A.G. Edwards. For several years prior to their deaths, Grace and Charles maintained their joint account at the Terre Haute branch of Wells Fargo Advisors. In July 2018, the couple's long-serving financial advisor retired, and Brian Cain became the financial advisor and management agent for Grace and Charles. On July 12, 2018, Cain met with Charles, Robin Dukes, and Carrie Holman at the Terre Haute branch. According to the complaint, Cain did not have another in-person meeting with either Charles or Grace.

¶ 5      During the summer of 2018, Grace and Charles each began to experience a decline in physical health, mobility, and cognitive function. A family meeting was scheduled for early

---

[1]Section 6-16 of the Probate Act of 1975 governs the powers of the administrator with the will annexed (755 ILCS 5/6-16 (West 2022)).

November. Grace, Charles, Robin Dukes, Kent Dukes, Debra Small, and Laurie Holman planned to attend the meeting. The purpose of the meeting was to discuss a plan for the expenses of long-term care for Grace and Charles. Robin Dukes cancelled the meeting at the last minute. Thereafter, he refused to talk with Debra and Laurie about the financial circumstances and assisted living arrangements of Grace and Charles.

¶ 6     On November 19, 2018, Grace and Charles purportedly executed a Wells Fargo Transfer on Death (TOD) application. The TOD application contained signature lines for Grace and Charles. A signature appeared on the line designated for Charles. The Estate alleged that the signature on the TOD application did not match the signature on Charles's will. The initials, "G.S.D," were printed on the line designated for Grace's signature. Grace's middle initial is "M." Grace and Charles did not travel to the Wells Fargo Advisors office in Terre Haute to sign the TOD application, and Cain was not present when the application was signed. The completed application was faxed to the Terre Haute branch on November 23, 2018. Cain facilitated the processing and approval of the TOD application. Debra Small and Laurie Holman did not learn of the TOD document until January 2022.

¶ 7     The TOD instrument designated Robin Dukes and Kent Dukes as beneficiaries of the Wells Fargo joint account. Each would receive 50% of the assets in the joint account upon the death of the last surviving owner of the joint account. The designation of beneficiaries in the TOD instrument did not follow the distribution set forth in the wills that Grace and Charles had executed in February 2012. According to the terms of Grace's will, if Charles failed to survive Grace by thirty days, the couple's residence, together with any other real estate, was to be given to Kent Dukes and Robin Dukes, equally, and "the rest, residue, and remainder of the estate" was to be

3

given to Debra Small, Laurie Holman, Kent Dukes, and Robin Dukes "in equal shares." The will executed by Charles contained reciprocal terms.

¶ 8    On December 10, 2018, Grace and Charles moved into an assisted living facility in Tilton, Illinois. At that time, Robin Dukes had power of attorney over the real estate and personal property owned by Grace and Charles. On July 2, 2019, Robin Dukes signed a Well Fargo Advisors Client Services Agreement (Advisory Agreement), as power of attorney for Grace and Charles. Under the terms of the Advisory Agreement, Robin Dukes assumed the authority to make trades, removing the trading functions formerly held by the Wells Fargo financial advisor and account manager. On October 21, 2020, Grace and Charles purportedly executed a warranty deed that conveyed their home to Kent Dukes. Charles passed away on June 15, 2021, at the age of 98. His cause of death was identified as renal failure secondary to anorexia and dementia. Grace Dukes passed away on July 4, 2021, at the age of 90. She died as a result of Alzheimer's Disease. Following Grace's death, Cain facilitated the transfer of the assets in the joint account to Robin Dukes and Kent Dukes pursuant to the TOD instrument. Robin Dukes and Kent Dukes assumed control over and sold the personal property and contents of the decedents' home.

¶ 9    On September 12, 2023, Debra Small, as Administrator of the Estate, filed a petition for citation to recover property and to discover information. The Estate brought counts against Robin Dukes and Kent Dukes, alleging a breach of their fiduciary duties to the beneficiaries of the Estate (count I), fraud (count II), tortious interference with an expectancy of inheritance (count III), and financial exploitation of an elderly person, pursuant to section 2-6.2 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/2-6.2 (West 2022)),[2] (count IV). The Estate alleged that Robin Dukes

---

[2]Section 2-6.2(e) provides that a civil action may be brought against a person for financial exploitation by an interested person after the death of the victim or during the lifetime of the victim if the victim is adjudicated a person with a disability. 755 ILCS 5/2-6.2(e) (West 2022).

4

and Kent Dukes either forged the signatures and initials on the TOD application or fraudulently induced Grace and Charles to sign the TOD application and engaged in self-dealing conduct, thereby obtaining the entire content of the Wells Fargo account and the residual personal property of the Estate. The Estate further alleged that the actions taken by Robin Duke and Kent Duke were contrary to the intent of Grace and Charles and permanently deprived Debra Small and Laurie Holman, as beneficiaries of the Estate, of their shares of the assets of the Estate. In the prayer for relief, the Estate asked the circuit court to issue a citation against Kent Dukes and Robin Dukes commanding them to provide a full accounting of the decedents' estate prior to and after the transfer of funds via the TOD and a full accounting of the household goods, furnishings, jewelry, and personal effects of the decedents. The Estate also sought damages and punitive damages if Kent Dukes and Robin Dukes were found liable, as alleged in the petition.

¶ 10    The Estate also brought counts against Brian Cain, as agent of Wells Fargo Advisors, alleging breach of his fiduciary duty (count V), and aiding and abetting financial exploitation of an elderly person pursuant to section 2-6.2 (755 ILCS 5/2-6.2 (West 2022)) (count VI). No counts were filed against Wells Fargo Advisors. According to the allegations in counts V and VI, in July 2018, Cain was aware that Grace and Charles were elderly and that they were experiencing age-related infirmities. Cain also knew that Robin Dukes was the primary person assisting Grace and Charles with the management of their estate. The Estate alleged that Cain had a fiduciary duty to act with vigilance to identify and prevent fraud and financial exploitation of Grace and Charles and that Cain breached his duty by accepting and processing the TOD application without taking steps to ascertain whether Grace and Charles had signed the TOD application as a result of a misrepresentation or undue influence and without scrutinizing the signatures on the application. The Estate further alleged that, upon Grace's death, Cain implemented the transfer of the joint

5

account to Kent Dukes and Robin Dukes, and that without Cain's assistance, Robin Dukes and Kent Dukes could not have financially exploited Grace and Charles. The Estate sought a citation commanding Cain and Wells Fargo Advisors to produce all records regarding the joint account from 2018 to the present, including any documents, records, or instruments executed by Robin Dukes as power of attorney for the decedents' property.

¶ 11    On September 19, 2023, Wells Fargo filed a motion to compel arbitration and to dismiss or stay the proceedings, along with a legal memorandum and supporting documents. Therein, Wells Fargo claimed the Estate was bound to arbitrate under the equitable principle of direct benefits estoppel. Wells Fargo argued that the Estate's claims against Cain were based on the joint account owned by Grace and Charles, that the joint account was covered by the 2019 Advisory Agreement, and that the Advisory Agreement contained an arbitration provision. Wells Fargo asserted that the Estate alleged that improper disbursements were made from the joint account and that the Estate sought a direct benefit of the joint account, *i.e.*, a recovery of portion of the funds in the joint account. Wells Fargo concluded that even though the Estate was not a signatory to the Advisory Agreement, the Estate was seeking a direct benefit of that agreement and therefore could not disclaim the arbitration clause in that agreement.

¶ 12    The arbitration provision in the Advisory Agreement provided in pertinent part:

"It is agreed that all controversies or disputes which may arise between you and WFA concerning any transaction or the construction, performance or breach of this Agreement or any other agreement between you and WFA, whether entered into prior to, on, or subsequent to this Agreement, including any controversy concerning whether an issue is arbitrable, shall be determined by arbitration conducted before, and only before, an

6

arbitration panel set up by the Financial Industry Regulatory Authority (FINRA) in accordance with its arbitration procedures."

The Advisory Agreement included a section containing definitions for specific terms used in the agreement. The terms, " 'You,' 'Yours,' 'the Undersigned,' and the 'Account Holder,' refer to the person(s) who sign the Signature Page(s) and enter into this Agreement."

¶ 13   The Estate filed a response in opposition to the motion to compel arbitration. The Estate initially noted that it was not a signatory to the 2019 Advisory Agreement and therefore was not bound by the arbitration provision in that agreement. The Estate claimed that it did not and would not receive any direct benefit from the Advisory Agreement or the Transfer on Death instrument. The Estate argued that the Advisory Agreement only pertained to how the stocks in the joint account were to be managed and, thus, provided a direct benefit of financial advice and counsel. The Estate asserted that it neither received financial advice nor derived any profit from the Advisory Agreement or the joint account. The Estate further asserted that any benefit that the beneficiaries might receive would result from being named in the decedents' will, and not from the Advisory Agreement. The Estate concluded that Wells Fargo failed to show that the Estate was bound to arbitrate under the doctrine of direct benefits estoppel.

¶ 14   Wells Fargo filed a reply. Therein, Wells Fargo initially noted that the lack of privity of contract with the Estate was not a disputed issue. Wells Fargo again argued that the Estate was seeking a direct benefit of the agreement containing the arbitration clause and so the doctrine of direct benefits estoppel requires the Estate to arbitrate its claims against them.

¶ 15   On March 26, 2024, the circuit court heard arguments on Wells Fargo's motion to compel arbitration and took the matter under advisement. On April 24, 2024, the court issued a written order. In the order, the court noted that it had reviewed the Estate's petition and the 2019 Advisory

Agreement, along with the pleadings and arguments of counsel. The court found no language indicating that a non-signatory was intended to directly benefit from the Advisory Agreement. Additionally, the court found that the Advisory Agreement provided the benefit of financial management services and that the Estate was not seeking the direct benefit of the financial management services provided under the Advisory Agreement. The court determined that the Estate sought information that would assist in the recovery of any property that might be due the estate, that the Estate had the right to bring the citation action and to seek appropriate remedies under section 6-16 of the Probate Act (755 ILCS 5/6-16 (West 2022)), and that the Estate's action did not flow from any language in the Advisory Agreement. The court concluded that direct benefits estoppel did not apply under the facts presented and denied the motion to compel arbitration. Wells Fargo appealed.

¶ 16                                     II. ANALYSIS

¶ 17    An order granting or denying a motion to compel arbitration is injunctive in nature and appealable under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001). Generally, when an interlocutory appeal is brought under Rule 307(a)(1), the only issue is whether there was a showing sufficient to sustain the circuit court's order granting or denying the motion to compel arbitration. *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 229 (2009). When the circuit court's order granting or denying a motion to compel arbitration is made without an evidentiary hearing and raises only legal issues, our review is *de novo*. *Clark v. Foresight Energy, LLC*, 2023 IL App (5th) 230346, ¶ 21; *Keefe*, 393 Ill. App. 3d at 229. In this case, the circuit court did not hold an evidentiary hearing, and the court's decision was based on a legal analysis of the issues presented. Accordingly, our review is *de novo*.

8

¶ 18    Section 2-619(a)(9) of the Code of Civil Procedure (Code) allows for a dismissal of a claim or other appropriate relief, such as a stay of the proceedings, where the claim is barred by an affirmative matter that avoids the legal effect of or defeats a claim. 735 ILCS 5/2-619(a)(9) (West 2022). A motion to stay the proceedings and compel arbitration is essentially a section 2-619(a)(9) motion to stay an action in the circuit court based on the exclusive remedy of arbitration. *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 21. The moving party has the initial burden to establish that the parties have a valid agreement to arbitrate and that the controversy is within the scope of the arbitration agreement. *Gaines v. Ciox Health, LLC*, 2024 IL App (5th) 230565, ¶ 25; *Sturgill*, 2016 IL App (5th) 140380, ¶ 22. In ruling on a motion to compel arbitration pursuant to section 2-619, the circuit court must construe all pleadings and supporting documents in a light most favorable to the nonmoving party. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004).

¶ 19    The arbitration clause at issue is governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2018)). Under the FAA, state courts and federal courts are authorized to stay an action and compel arbitration upon being satisfied that the issues involved are referable to arbitration under a written agreement to arbitrate. See 9 U.S.C. § 3 (2018). Section 2 of the FAA provides that a written agreement to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2018). The FAA reflects the fundamental principle that arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). An arbitration agreement is placed on the same footing as other contracts. Like any other contract, an arbitration agreement is a matter of consent, not coercion. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478-79 (1989). Arbitration is a way to resolve disputes,

but only those disputes that the parties have agreed to arbitrate. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Whether the parties to a dispute have contractually agreed to submit a dispute to arbitration is determined according to ordinary principles of state law governing contracts. *First Options*, 514 U.S. at 944.

¶ 20　On appeal, Wells Fargo initially claims that the Estate is bound by the decedent's contractual obligations under the Advisory Agreement, including the arbitration provision, even though the Estate is a nonsignatory to the agreement. In response, the Estate argues that Wells Fargo is presenting a new argument and a new legal theory on appeal that Wells Fargo did not raise in the circuit court. After reviewing the record, we agree that this issue was not presented to or considered by the circuit court. In their pleadings, Wells Fargo argued that the Estate was bound to arbitrate its disputes based upon the doctrine of direct benefits estoppel. Wells Fargo asserted that direct benefits estoppel applied because the Estate sought the direct benefit of the Advisory Agreement and therefore could not disclaim the arbitration provision in that agreement. In reply to the Estate's memorandum in opposition to the motion to compel, Wells Fargo specifically noted that lack of privity of contract was not an issue in dispute. Wells Fargo maintained its position that the Estate had received a direct benefit from an agreement containing an arbitration provision and that the doctrine of direct benefits estoppel required the Estate to arbitrate its claims against Wells Fargo. Contrary to Wells Fargo's contentions, its claim that the Estate was bound by the decedent's contractual obligations was first raised in this appeal and therefore comes too late. Issues not raised in the circuit court are forfeited and may not be raised for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996); *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 72. Thus, the issue is forfeited.

10

¶ 21 Next, Wells Fargo claims that the Estate is required to arbitrate based upon the doctrine of direct benefits estoppel. Wells Fargo contends that the Estate is seeking a direct benefit derived from the Advisory Agreement and, therefore, it is estopped from disclaiming the arbitration provision in that agreement. Wells Fargo relies upon decisions from federal courts that have accepted the doctrine of direct benefits estoppel.

¶ 22 The general policy in Illinois is that a nonsignatory should not be forced to arbitrate a dispute pursuant to an arbitration agreement that it did not agree to and was not a party to. *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 513-14 (2004). Under direct benefits estoppel, a nonsignatory is estopped from refusing to comply with an arbitration agreement if it knowingly seeks a direct benefit that flows directly from the contract containing the arbitration clause. See *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1025 (7th Cir. 2024); *Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 383 (7th Cir. 2014). A benefit derived from the agreement itself is direct. *Coatney*, 93 F.4th at 1025; *Everett*, 771 F.3d at 383. In contrast, "a benefit derived from the exploitation of the contractual relationship of parties to an agreement, but not the agreement itself, is indirect." (Internal quotation marks omitted.) *Coatney*, 93 F.4th at 1025-26; *Everett*, 771 F.3d at 383-84.

¶ 23 At the outset, we note that neither party has cited a case in which the Illinois Supreme Court directly addressed whether Illinois recognizes that a nonsignatory may be bound to a contract under the doctrine of direct benefits estoppel. Although a few Illinois appellate court decisions discuss the doctrine of direct benefits estoppel, the appellate court did not find direct benefits estoppel applicable to bind a nonsignatory to a contract under the facts of those cases. See *Peterson v. Devita*, 2023 IL App (1st) 230356, ¶¶ 46-47; *Snyder v. Jack Schmitt Ford, Inc.*, 2022

11

IL App (5th) 210413-U, ¶¶ 47-49; *American Economy Insurance Co. v. Accelerated Rehabilitation Centers, Ltd.*, 2022 IL App (1st) 211410-U, ¶¶ 24-26. The same is true here.

¶ 24 Based upon our review of the record, Wells Fargo did not establish that the Estate sought or received a benefit flowing directly from the joint account or the Advisory Agreement. In this case, the Estate was not a signatory to the Advisory Agreement. It was not seeking enforcement of the Advisory Agreement. The Estate was not a named beneficiary of the joint account, and there is no evidence that it derived a direct benefit from the joint account. As noted by the Estate, the decedent's will, not the Advisory Agreement, was the instrument that would have bestowed direct benefits upon the heirs of the decedent's estate. The Estate sought an order directing Wells Fargo to produce records regarding the joint account from 2018 to the present. It did not seek to recover the joint account assets from Wells Fargo. The Estate was authorized to file the petition for citation to recover property and discover information under section 6-16 of the Probate Act. 755 ILCS 5/6-16 (West 2022). The Estate's counts against Cain alleged a breach of fiduciary duty and aiding and abetting the financial exploitation of elderly persons under section 2-6.2 of the Probate Act (755 ILCS 5/2-6.2 (West 2022)). The allegations are not integrally related to the Advisory Agreement containing the arbitration provision; thus, they may be pursued without reference to the Advisory Agreement. After reviewing the record, we conclude, as the circuit court did, that the Estate did not seek a direct benefit from the Advisory Agreement and it did not receive a direct benefit flowing from the advisory services relationship arising from that Agreement. Any benefit to the Estate was derived from the exploitation of the advisory relationship and was indirect.

¶ 25                           III. CONCLUSION

¶ 26    In sum, Wells Fargo failed to show that direct benefits estoppel applied under the facts of this case. Accordingly, the circuit court did not err in denying Wells Fargo's motion to compel arbitration. The circuit court's order is affirmed, and the cause is remanded for further proceedings.

¶ 27    Affirmed.

*In re Estate of Dukes*, 2025 IL App (5th) 240645

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Vermilion County, No. 22-PR-157; the Hon. Charles C. Hall, Judge, presiding. |
| **Attorneys for Appellant:** | Eric D. Martin, of Norton Rose Fulbright US LLP, of St. Louis, Missouri, for appellants. |
| **Attorneys for Appellee:** | Jeffrey B. Friedman, of Maatuka Al-Heeti Emkes LLC, of Champaign, for appellee. |