2026 IL App (1st) 252002-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
January 26, 2026

No. 1-25-2002

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| NIKOLAY NIKOLOFF, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County |
| | ) | |
| NORTHROP GRUMMAN SYSTEMS CORPORATION | ) | No. 25 L 63052 |
| and ELIZABETH RODRIGUEZ, | ) | |
| | ) | The Honorable |
| Defendants-Appellees. | ) | Martin S. Agran, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The trial court's order granting the defendant's motion to compel arbitration is affirmed.

¶ 2    The plaintiff, Nikolay Nikoloff, appeals the trial court's order granting the motion by the defendant, Northop Grumman Systems Corporation, to compel arbitration. For the reasons that follow, we affirm the order of the trial court compelling arbitration.

¶ 3                                BACKGROUND

¶ 4    The complaint, affidavits, and exhibits before the court demonstrate the following facts

pertinent to this appeal. The plaintiff is a software engineer who was employed by the defendant from about May 6, 2024, to November 12, 2024. The defendant's recruitment of him began around November 2023, when it first offered him a position contingent on his obtaining an interim security clearance that would enable him to work on classified projects. The plaintiff declined the defendant's initial offer of employment and instead accepted a position with MEMX LLC, which came with a significantly larger salary than the defendant's initial offer.

¶ 5      By a letter dated November 3, 2023, the defendant made an updated offer of employment to the plaintiff for the position of staff software engineer with a higher salary than its initial offer. The position remained contingent upon the plaintiff's obtaining an interim security clearance. The defendant's letter to the plaintiff also stated that employment was contingent upon, *inter alia*, "[r]eceipt and signature on all required Onboarding Forms, to include a signed Form C-100E (Agreement Regarding At-Will Employment, Arbitration of Disputes, Intellectual Property Rights and Procurement Integrity)." The letter stated that those forms would be provided to the plaintiff as part of his onboarding process.

¶ 6      The plaintiff thereafter continued his employment with MEMX. However, on February 7, 2024, he received an interim security clearance and was subsequently requested by the defendant's human resources department to establish a start-date. On February 12, 2024, the plaintiff had a phone conversation with Elizabeth Rodriguez, his prospective manager who is also a defendant in this case. She stated to him in that conversation that, although it would take him a year to become proficient, the defendant needed people with his skills, and the position offered an opportunity for long-term career advancement with the defendant. The plaintiff and Rodriguez had a second phone conversation on April 2, 2024, in which she reiterated the same promises and representations as in the first conversation. The plaintiff thereafter resigned his position with MEMX.

¶ 7 On April 9, 2024, as part of his onboarding process with the defendant, the plaintiff logged into the defendant's online "talent management system" and electronically signed a four-page document titled Form C-100E. That document included the following pertinent provisions:

"2. I understand and agree that it is my duty to perform my job duties faithfully, and I agree to comply with the rules of the company [*i.e.*, the defendant], including those set forth in corporate and sector Principles and Operating Practices and as they may be amended from time to time at the company's sole discretion. I acknowledge that Principles and Operating Practices policies, procedures, topical manuals, and other documents, both at the corporate level and at the sector and business unit levels, do not create an express or implied contract of employment or any other contractual commitment between the company and me, except that I acknowledge and agree that CTM H200: *USHR 2-32*, Arbitration and Mediation, constitutes a mutually binding agreement to arbitrate between me and the company.

\*\*\*

ARBITRATION AGREEMENT

4. I agree to submit disputes between me and the company to final and binding arbitration in accordance with CTM H200: USHR 2-32, (the 'arbitration program'), which is incorporated into this agreement by reference. I will accept an arbitrator's award under the arbitration program as the final, binding, and exclusive determination of such disputes, subject to the standards of review set forth in the Federal Arbitration Act, 9 U.S.C. §§ 1-16, or other applicable law. I have read the arbitration program, a copy of which has been provided to me with this agreement.

BY SIGNING THIS AGREEMENT, I AGREE TO SUBMIT ALL CLAIMS COVERED BY THE ARBITRATION PROGRAM TO FINAL AND BINDING

ARBITRATION UNDER THAT PROGRAM. BY DOING THIS, I AM GIVING UP ANY RIGHT TO HAVE SUCH CLAIMS DECIDED BY A COURT OR JURY.

\*\*\*

OTHER PROVISIONS

\*\*\*

14. The laws of the Commonwealth of Virginia will govern the interpretation, validity, and effect of this agreement without regard to where signed or performed, except that, for employees who primarily reside and work in jurisdictions where a state statute precludes a Virginia choice of law, the law of the state of the employee's work location will govern this agreement instead." (Emphasis added.)

¶ 8 Significant here, in the portion of paragraph 2 of Form C-100E that we have italicized above, the words "USHR 2-32" was purportedly a hyperlink that would redirect a user to a section numbered USHR 2-32 of the defendant's United States human resources manual, titled "Arbitration and Mediation." However, according to an affidavit filed in this case by the plaintiff, that hyperlink was not functional on April 9, 2024, when he attempted to view it. As such, the plaintiff was unable to access the section of the human resources manual addressing arbitration, and he had no other means during the onboarding process to review its contents.

¶ 9 On May 6, 2024, the plaintiff commenced working for the defendant. However, between June and October 2024, the plaintiff's lack of a full security clearance prevented him from accessing the level of classified materials he needed to work on projects consistent with his level of expertise. On October 24, 2024, the plaintiff was finally granted a full security clearance and was able to access classified materials. Four days later, on October 28, 2024, the plaintiff was informed by his manager that his position was being eliminated and that his final date of employment would be

November 12, 2024. The plaintiff attempted to return to his prior position at MEMX but was informed that his former position had been filled.

¶ 10    On October 29, 2024, the plaintiff again accessed Form C-100E and clicked the hyperlink within it in an attempt to access the section of the defendant's human resources manual addressing arbitration. According to the plaintiff's affidavit, the hyperlink remained nonfunctional as of that date. Clicking on it produced no content or redirection to any section of the human resources manual. The plaintiff averred that after again encountering the broken hyperlink, he conducted a search within the defendant's internal document portal accessed through his corporate log-in. He was thereby able to downloaded a version of a document labeled "USHR 2-32."

¶ 11    On December 2, 2024, the plaintiff filed a charge of discrimination based on age and national origin with the Illinois Department of Human Rights and thereafter received a right-to-sue notice. On March 24, 2025, the plaintiff filed the instant complaint against the defendant and Rodriguez. The plaintiff's complaint included four counts: (1) unlawful discrimination on the basis of age and national origin in violation of the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 2024)), (2) promissory estoppel, (3) scheme to defraud, and (4) intentional interference with contractual expectancy.

¶ 12    The defendant thereafter filed the motion to compel arbitration that is the subject of this appeal. Attached to it was an affidavit by Roderick Nelson, which established a foundation for the contents of section USHR 2-32 of the defendant's human resources manual, titled "Arbitration and Mediation." That document included the following provisions pertinent to this appeal:

> "Claims Covered
>
> Either you or the company are entitled to request mediation of any claim covered by the Mediation and Binding Arbitration process ('this Program'). Both you and the company

agree to submit all claims covered by this Program to binding arbitration, rather than to have such claims heard by a court or jury. The parties' obligation to arbitrate claims under this Program may be enforced in any court of competent jurisdiction, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, or applicable state law.

Except as expressly provided below, this Program covers and applies to any claim, controversy, or dispute, past, present, or future:

• Which in any way arises out of, relates to, or is associated with your employment with the company, the termination of your employment, or any communications with third parties regarding or related to your employment; and

• As to which a court would be authorized by law to grant relief if the claim were successful.

***

Examples of claims which are covered by this Program include, but are not limited to, claims for:

• Wages or other compensation due;

• Breach of any contract or covenant, express or implied;

• Personal injury, defamation, or other tort claims, except to the extent any such claim would be covered under applicable workers' compensation law;

• Unlawful discrimination or harassment, including but not limited to discrimination or harassment based on race, sex, religion, national origin, age, disability, or any other status as protected and defined by applicable law;

• Unlawful retaliation;

• Benefits, except as expressly excluded above; and

• Any violation of applicable federal, state, or local law, statute, ordinance, or regulation.

\*\*\*

The obligations set forth in this Program (both yours and the company's) survive your employment relationship with the company, and apply to any covered claim whether it arises or is asserted during or after termination of your employment with the company.

By accepting or continuing employment, employees covered by this Program agree to submit any covered claims to binding arbitration, rather than to have such claims heard by a court, jury, or government agency.

\*\*\*

Authority of the Arbitrator

To the fullest extent permitted by law, all matters of procedure, arbitrability of the issues, the location, and the conduct of the hearing will be determined by the arbitrator, consistent with The Arbitration Rules \*\*\*."

¶ 13    In response to the defendant's motion to compel arbitration, the plaintiff argued that Virginia law applied to this agreement due to the choice-of-law provision of Form C-100E and that under Virginia law, threshold issues of arbitrability were to be decided by a court. He also argued that because the hyperlink to the pertinent section of the human resources manual was nonfunctional when he signed Form C-100E, he did not assent to its terms. He argued that the provision of Form C-100E dealing with arbitration was too broad to be enforceable and was both procedurally and substantively unconscionable. The plaintiff's response also disputed an argument raised by the defendant that, if Illinois law applied here, then section 1-25(b) of the Workplace Transparency Act (820 ILCS 96/1-25(b) (West 2024))—which prohibits provisions in Illinois employment

contracts requiring the arbitration of certain claims involving employment discrimination—was preempted by the Federal Arbitration Act. The plaintiff took the position that this Illinois statute was not preempted, although he made no affirmative argument that this Illinois statute applied in this case to preclude arbitration of the present dispute.

¶ 14    The trial court held oral argument on the motion to compel arbitration on July 29, 2025. This consisted only of attorney argument and did not involve an evidentiary hearing. It took the matter under advisement and ultimately granted the motion on September 3, 2025. In its ruling, the trial court found the controlling fact to be that the plaintiff had signed Form C-100E on April 9, 2024, and by so doing had acknowledged that "I have read the arbitration program, a copy of which has been provided to me with this agreement." The trial court reasoned that the plaintiff was bound by this acknowledgement that he had signed, and thus section USHR 2-32 was part of the parties' contract. And, because section USHR 2-32 provided that "arbitrability of the issues *** will be determined by the arbitrator," which was a permissible matter of contract, the trial court ruled that any issues as to the arbitrability of the plaintiffs' claims were decisions for the arbitrator to determine. The plaintiff thereafter filed a timely notice of interlocutory appeal.

¶ 15                                    ANALYSIS

¶ 16    Section 2 of the Federal Arbitration Act provides that a written provision in a contract to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2018). This is a substantive requirement of federal law that state courts have a duty to enforce. See *Badgerow v. Walters*, 596 U.S. 1, 8 n.2 (2022). It reflects the fundamental principle that arbitration is a matter of contract (*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)) and ensures that courts enforce arbitration contracts according to their terms. See *Henry Schein, Inc. v. Archer & White*

*Sales, Inc.*, 586 U.S. 63, 67 (2019). Thus, on one hand, a party cannot be required to submit to arbitration a dispute that he or she has not contractually agreed so to do. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). On the other hand, though, parties may agree by contract to submit issues to an arbitrator that would otherwise be for a court to decide; in other words, they can contract to have an arbitrator decide "gateway" issues of "arbitrability," such as whether a particular controversy is within the scope of their agreement to arbitrate. See *Rent-A-Center*, 561 U.S. at 68-69. In this latter situation, courts require "clear and unmistakable" evidence that the parties have agreed to delegate gateway questions of arbitrability to an arbitrator. *Henry Schein*, 586 U.S. at 69 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). But where a court determines that a valid agreement to arbitrate exists and that such agreement delegates issues of arbitrability to an arbitrator, the court may not thereafter decide such issues of arbitrability. *Id.* Our standard of review is *de novo*. *In re Estate of Dukes*, 2025 IL App (5th) 240645, ¶ 17.

¶ 17    As stated above, the trial court found in this case that there was a valid contract to arbitrate, that the plaintiff was bound by his representation in that signed contract that he had received and read a copy of the arbitration program (*i.e.*, section USHR 2-32 of the human resources manual), and that a provision of that arbitration program delegated matters of arbitrability for determination by the arbitrator. Again, the purported delegation provision states, "To the fullest extent permitted by law, *** arbitrability of the issues *** will be determined by the arbitrator, consistent with The Arbitration Rules ***."

¶ 18    On appeal, the plaintiff argues that the trial court erred in finding that a valid agreement to arbitrate existed in this case. Whether parties have agreed to arbitrate a certain matter, including threshold issues of arbitrability, is generally determined according to ordinary principles of state

law governing contracts. *First Options*, 514 U.S. at 944. For reasons we discuss in greater detail below, we conclude that the plaintiff is bound by his position in the trial court that the law of the Commonwealth of Virginia applies to the validity of this contract pursuant to the choice-of-law provision included in Form C-100E. We note, however, that we discern no meaningful difference between Illinois and Virginia law as to the following matters of basic contract formation.

¶ 19    Virginia law requires that "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract." *Allen v. Aetna Casualty & Surety Co.*, 222 Va. 361, 364, 281 S.E.2d 818, 820 (1981). The plaintiff's basic argument is that mutual assent to reasonably certain terms does not exist here, because the nonfunctional hyperlink within Form C-100E kept him from accessing, reading, or assenting to the terms of the arbitration program set forth in section USHR 2-32 of the human resources manual at the time of contracting or thereafter. The plaintiff further asserts that the defendant did nothing more to ensure that he became aware of those terms at the time of his onboarding in April 2024 or to obtain his assent to them (such as obtaining his signature on section UNHR 2-32 itself).

¶ 20    We reject the plaintiff's argument that no valid arbitration agreement exists in this case. It is beyond dispute that, when the plaintiff signed Form C-100E on April 9, 2024, he was agreeing that at least some disputes he had with the defendant would have to be submitted to binding arbitration. More specifically, his agreement by signing Form C-100E was to submit disputes to final and binding arbitration "in accordance with CTM H200: USHR 2-32, (the 'arbitration program'), which is incorporated into this agreement by reference." This agreement was reiterated in the paragraph of Form C-100E that followed, wherein he agreed, "BY SIGNING THIS AGREEMENT, I AGREE TO SUBMIT ALL CLAIMS COVERED BY THE ARBITRATION PROGRAM TO FINAL AND BINDING ARBITRATION UNDER THAT PROGRAM." And

the plaintiff's signed agreement on Form C-100E also stated, "I have read the arbitration program, a copy of which has been provided to me with this agreement."

¶ 21    Having signed Form C-100E that included the above agreements and representations, the plaintiff cannot disavow his contractual obligations by now asserting that the hyperlink within it to the arbitration program was nonfunctional. Virginia follows the familiar principle of contract law that a person who accepts a written agreement or contract is presumed to know and assent to its contents. See *Zeng v. Wang*, 82 Va. App. 326, 348, 906 S.E.2d 668, 678 (2024). Additionally, a person who signs a written contract will normally be bound by its terms, and ignorance of the terms will not ordinarily affect the liability of such person under the contract. *Id.*

¶ 22    Here, regardless of the functionality of the hyperlink to the arbitration program found at section USHR 2-32 of the human resources manual, the plaintiff nevertheless signed a contract that clearly and expressly identified this document and stated that it was incorporated into the agreement by reference. The plaintiff further signed a contract acknowledging that he had read this document and been provided with a copy of it at the time of contracting. This express incorporation of a clearly identified document, along with the plaintiff's contractual acknowledgement that he received and read the arbitration program, is entirely sufficient to constitute incorporation by refence of the arbitration program into the parties' agreement under Virginia law. See *Marriott v. Harris*, 235 Va. 199, 214, 368 S.E.2d 225, 232 (1988). We reject any argument by the plaintiff that there was insufficient incorporation by reference of the arbitration program here due either to the broken hyperlink or to the fact that he did not actually seek, obtain, and read the arbitration program until October 29, 2024.

¶ 23    As with any other party and contract, it was fully the plaintiff's prerogative to sign Form C-100E even if it was untrue that he had received a copy of the arbitration program or that he had

read it prior to signing. But having signed the contract, the presumption exists that he understood what it contained and assented to it; he is bound by its terms and cannot escape his contractual obligations by asserting that he was ignorant of the full extent of his agreement. See *Zeng*, 82 Va. App. at 348, 906 S.E.2d at 678. There is no suggestion here that, despite the nonfunctioning hyperlink, the plaintiff would not have been able by reasonable diligence to obtain a copy of the section of the human resources manual addressing the arbitration program at or near the time he signed this contract. By contrast, his own affidavit shows that he was able to obtain it by searching within the defendant's internal document portal when he attempted to do so on October 29, 2024. Particularly in consideration of the fact that the plaintiff is a skilled and experienced computer software engineer, his failure to search for this document in a timely fashion is not grounds for avoiding its incorporation by reference into Form C-100E pursuant to the clear terms of the parties' agreement.

¶ 24     The plaintiff also challenges the arbitration provisions in this case as being procedurally and substantively unconscionable. Again, his basic argument as to both theories is that it is unconscionable to saddle him with contractual arbitration obligations that were unknown to him due to the nonfunctional hyperlink in Form C-100E and the lack of additional effort by the defendant to apprise him of the details of the arbitration program at the time of contracting. He contends that he lacked any realistic choice about agreeing to arbitration under the circumstances because he had already resigned from his higher-paying employment following the time-consuming process of obtaining a security clearance and multiple verbal assurances that doing so would be worthwhile.

¶ 25     Although the difference is not outcome determinative, we note that Virginia's formulation of the doctrine of unconscionability differs somewhat from that of Illinois. Under Virginia law, the

standard for avoiding an agreement on grounds of unconscionability requires that it be "one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other." *Management Enterprises, Inc. v. Thorncroft Co.*, 243 Va. 469, 473, 416 S.E.2d 229, 231 (1992). "Unconscionability contains both procedural and substantive components, both of which must be met to render a contractual provision unenforceable. [Citation.] Procedural unconscionability requires a showing that the bargaining process was inequitable, while substantive unconscionability requires a showing of gross disparity in the substantive terms 'as to shock the conscience.' " *Rivas-Marquez v. Commonwealth*, No. 0944-21-2, 2022 WL 2202946, \*5 (Va. App. June 21, 2022). Under Illinois law, procedural unconscionability refers to a situation where a contract term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and it also takes into account a lack of bargaining power. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 100 (2006). Substantive unconscionability refers to a situation in which a contract term is inordinately one-sided in one party's favor. *Id.*

¶ 26        We find the plaintiff's arguments to be meritless under any of the above standards of unconscionability for essentially the same reasons that we addressed above. The defendant's letter of November 3, 2023, shows that the plaintiff was informed by that time that any future employment with the defendant was contingent upon his agreement to arbitration of disputes. Although he may have been unaware of the full particulars of the defendant's arbitration program, he nevertheless knew that some form of arbitration contract was forthcoming during the time he was seeking to obtain a security clearance and when he decided to leave his job at MEMX. Thus, if arbitration was truly a dealbreaker, we see no reason why he could not have ended this process and kept his higher paying job. Further, the plaintiff has not directed our attention to any aspect of

the defendant's arbitration program that we would consider "shocking" or beyond what a prospective employee would reasonably anticipate from an employer such as the defendant. Instead, it appears no different than the kinds of arbitration agreements made by employers and employees and enforced by courts routinely. As discussed above, we find no indication that the plaintiff could not by reasonable diligence have obtained the section of the human resources manual addressing the arbitration program if he had searched for it or informed the defendant that the hyperlink in its contract was nonfunctional. But the fact that he did not exercise reasonable diligence to obtain a copy of the document that he was agreeing he had received, read, and was incorporating by reference into the contract does not render the agreement unconscionable.

¶ 27    The plaintiff's next challenge to the existence of an enforceable arbitration agreement is an argument that the parties' employment agreement is preempted by section 1-25(b) of the Workplace Transparency Act (820 ILCS 96/1-25(b) (West 2024)). In pertinent part, that Illinois statute declares void and against public policy any agreement that is a unilateral condition of employment and "requires the employee *** to *** arbitrate *** any existing or future claim *** related to an unlawful employment practice to which the employee *** would otherwise be entitled under any provision of State or federal law." *Id.* For purposes of this statute, "unlawful employment practice" includes, *inter alia*, "any form of unlawful discrimination *** that is actionable under Article 2 of the Illinois Human Rights Act [(775 ILCS 5/Art. 2 (West 2024))]." 820 ILCS 96/1-15(b) (West 2024). The plaintiff also relies upon a recent amendment to this statute to argue that Virginia law can no longer be applied to this case or that its application to Illinois employment agreements is now questionable.

¶ 28    The plaintiff asserts in his appellate brief that he made this argument in the trial court, and he faults the trial court for failing to address it. By contrast, the defendant argues that the plaintiff

waived any argument that this Illinois statute controls in this case by steadfastly maintaining the position in the trial court that only Virginia law applied here. The defendant further argues that even if we reach this issue, we would be compelled to hold that this Illinois statute is preempted by the Federal Arbitration Act, as a federal district court has ruled in *Jennings v. Ed Napleton Elmhurst Imports, Inc.*, No. 1:23-cv-14099, 2025 WL 461433, *8-9 (N.D. Ill. Feb. 11, 2025).

¶ 29     We have reviewed the record, and we agree with the defendant that the plaintiff's present argument is not one that he made in the trial court. Generally, a reviewing court will not consider on review issues and arguments that were not presented to or considered by the trial court. *Grimes v. Sage Telecom Communications, LLC*, 2018 IL App (1st) 171455, ¶ 23. Where aspects of an appellant's arguments for reversal are sufficiently distinct from the arguments raised in the trial court, those aspects not presented to the trial court may be forfeited. *Id.* The purpose of enforcing such forfeiture rules is to encourage parties to raise issues in the trial court, thus ensuring both that the trial court is given an opportunity to correct an error prior to appeal and that a party does not obtain a reversal through his or her own inaction. See *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14.

¶ 30     In the proceedings below, the plaintiff never affirmatively argued to the trial court or sought a ruling from it that section 1-25(b) of the Workplace Transparency Act applied in this case as a basis for denying arbitration. Instead, this statute was injected as an issue into this case by the defendant in its motion to compel arbitration. There, the defendant made the argument that an enforceable arbitration agreement existed here regardless of whether the court applied Virginia law (pursuant to the choice-of-law provision in the parties' agreement) or Illinois law (as the law of the forum). As part of its argument that the arbitration agreement was enforceable under Illinois law, the defendant fronted the assertion that section 1-25(b) of the Workplace Transparency Act

would not prevent arbitration in this case because that statute was preempted by the Federal Arbitration Act. The defendant cited *Jennings*, in which the district court found that section 1-25(b) fell squarely within that category of state laws considered automatically preempted because they " 'prohibit outright the arbitration of a particular type of claim.' " *Jennings*, 2025 WL 461433, *9 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011)).

¶ 31    In the plaintiff's response brief to the motion to compel arbitration, the plaintiff's position was that Virginia law applied to the parties' employment agreement under its choice of law provision and was therefore controlling on the defendant's motion to compel arbitration. The entirety of the plaintiff's argument concerning the aforementioned Illinois statute was as follows:

"H. The FAA Does Not Preempt the Illinois Workplace Transparency Act (IWTA)

The IWTA, which aims to 'protect the interest of [this] State in ensuring all workplaces are free of unlawful discrimination [and] harassment,' declares certain types of employment agreements unenforceable. [820 ILCS 96/1-5 (West 2024)]. As relevant here, the Act states the following:

[']Any agreement, clause, covenant, or waiver that is a unilateral condition of employment or continued employment and requires the employee or prospective employee to waive, arbitrate, or otherwise diminish any existing or future claim, right, or benefit related to an unlawful employment practice to which the employee or prospective employee would otherwise be entitled under any provision of State or federal law, is against public policy, void to the extent it denies an employee or prospective employee a substantive or procedural right or remedy related to alleged unlawful employment practices, and severable from an otherwise valid and enforceable contract under this Act.[']

Defendant's reliance on *Jennings* \*\*\* is unavailing. First of all, there is no Illinois case standing for the proposition that the IWTA is preempted by arbitration agreements. Defendants only site [*sic*] to a federal trial court ruling in support of its proposition that the FAA preempts the IWTA. The Supreme Court has repeatedly reaffirmed that not all state laws touching on arbitration are preempted. See *Kindred Nursing [Centers Limited Partnership] v. Clark*, 581 U.S. 246, 255 (2017) (FAA preempts only laws that 'rely on the uniqueness of arbitration as a basis for limiting its enforcement'); *Allied-Bruce Terminix [Companies, Inc.] v. Dobson*, 513 U.S. 265, 281 (1995) (state laws may apply so long as they do not disfavor arbitration as a category). Accordingly, the FAA does not preempt the IWTA as applied here, and Plaintiff's challenge to the arbitration clause remains fully valid under both state and federal law."

Notably, there was no affirmative request made in the plaintiff's response brief for the trial court to find that Illinois law—specifically section 1-25(b) of the Workplace Transparency Act—applied in this case and precluded arbitration.

¶ 32    At oral argument on the motion to compel, neither party's attorney nor the trial court made any mention of section 1-25(b) of the Workplace Transparency Act. In particular, when the trial court stated that it intended to honor the parties' choice-of-law provision and apply Virginia law to this contract and motion, plaintiff's counsel made no mention of this Illinois statue or sought to have the trial court apply it to this case. At the subsequent court appearance wherein the trial court issued its ruling, there was again no mention of section 1-25(b) or request by plaintiff's counsel for the trial court to rule on its applicability in this case. If it was the plaintiff's position that he had affirmatively raised this issue, his inaction in not requesting a ruling from the trial court on it results in the forfeiture of any claimed error. *Dore v. Quezada*, 2017 IL App (1st) 162142, ¶ 27.

¶ 33        We acknowledge the plaintiff's point that section 1-25(b) of the Workplace Transparency Act was the subject of an amendment that was enacted following the completion of briefing and oral argument but before the trial court issued its ruling on the motion to compel arbitration. By that amendment, the General Assembly added to the list of employment contract provisions declared as against public policy those that purport to "apply non-Illinois law to an Illinois employee's claim" related to an unlawful employment practice. Pub. Act 104-320, § 5 (eff. Jan. 1, 2026) (amending 820 ILCS 96/1-25(b)). The plaintiff argues that by virtue of this amendment, either Virginia law no longer applies in this case or its application to the contracts of Illinois-based employees is now "questionable."

¶ 34        As with his broader arguments concerning the applicability of section 1-25(b), the plaintiff's arguments about the effect of its amendment on the application of Virginia law in this case is an issue that the plaintiff could have raised in the trial court but did not. One of the proper purposes of a motion to reconsider is to bring to the trial court's attention a change in existing law, such as the amendment of a statute shortly before a ruling was issued. See *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36. The plaintiff's failure to raise this issue in the trial court, at least by a motion to reconsider, results in forfeiture for the same reasons we discussed above. Furthermore, his argument on appeal concerning the effect of this amendment consists only of a single paragraph. It merely asserts that Virginia law "no longer applies here" or that its application to employment contracts involving Illinois-based employees is now "questionable." He makes no attempt to explain how the cited language of the statutory amendment applies to the facts of this case or affects an employment contract executed prior to its effective date. The plaintiff's cursory treatment of this issue involving the statutory amendment serves as an additional basis for our finding of forfeiture. See *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36.

¶ 35 Finally, the plaintiff asserts that the parties' arbitration agreement does not delegate threshold questions of arbitrability to the arbitrator by clear and unmistakable evidence. The plaintiff notes that the default rule is that questions of arbitrability are decided by courts, and he argues that the parties' employment agreement is silent about what issues the arbitrator or courts are to decide. We disagree. We find that the parties' agreement clearly and unmistakably delegates all issues of arbitrability to the arbitrator through its incorporation by reference of the provision of the arbitration program stating that, "[t]o the fullest extent permitted by law, *** arbitrability of the issues *** will be determined by the arbitrator." Accordingly, we concur with the trial court that, pursuant the Federal Arbitration Act, all issues as to the arbitrability of the plaintiffs' claims are decisions for an arbitrator. See *Henry Schein*, 586 U.S. at 69.

¶ 36                                            CONCLUSION

¶ 37 For the foregoing reasons, the order of the trial court granting the defendant's motion to compel arbitration is granted.

¶ 38 Affirmed.